IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

YA XIONG,

       Plaintiff,                    No. CIV S-05-1083 GGH

      vs.

MICHAEL J. ASTRUE,[1]            ORDER
Commissioner of
Social Security,

       Defendant.
_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand is denied, the Commissioner's Cross Motion for Summary Judgment is granted, and the Clerk is directed to enter judgment for the Commissioner.

BACKGROUND

       Plaintiff, born December 31, 1971, alleged she was unable to work since January 1, 1988, due to low back pain, lung problems, poor appetite, body weakness, low weight and

---

[1] Michael J. Astrue became Commissioner on February 12, 2007. Accordingly, he should be substituted as defendant in this suit. Fed. R. Civ. P. 25(d)(1). No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

being too short. (Tr. at 74, 117.) Plaintiff's first application, alleging disability since 1990, was denied on March 20, 1995. (Tr. at 68.) Plaintiff's second application, alleging disability since February 2, 1999, was denied on January 6, 2001. (Id. at 48.) Plaintiff's third application resulted in a finding of disability, but only commencing on April 27, 2001. (Id. at 32.)

The instant case concerns plaintiff's appeal from the second application, to obtain benefits for the period from February 2, 1999 through April 26, 2001. In a decision dated March 7, 2005, ALJ Mark C. Ramsey determined that plaintiff was not disabled during this time period.[2] (Tr. at 11-16.) The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since February 2, 1999.

2. The medical evidence establishes that the claimant has severe situational depression and adjustment disorder, but

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |   |   |
|---|---|---|
|   |   | that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. |
|   | 3. | The claimant's testimony regarding her virtual lack of any meaningful activities on a sustained basis during the time period at issue cannot be credited for the above stated reasons. |
|   | 4. | The claimant has the residual functional capacity to perform the non-exertional requirements of work except for more than simple unskilled work.  There are no exertional limitations (20 CFR § 416.945). |
|   | 5. | The claimant has no past relevant work experience. |
|   | 6. | The claimant is 33 years old, which is defined as a younger individual (20 CFR § 416.963). |
|   | 7. | The claimant unable to communicate in English [sic] (20 CFR § 416.964). |
|   | 8. | The claimant does not have any acquired work skills which are transferable to the skilled or semi skilled functions of other work (20 CFR § 416.968). |
|   | 9. | Considering the range of work at all levels which the claimant was still functionally capable of performing, in combination with her age, education, and work experience, and using the above cited section 204.00 as a guide for decisionmaking, the claimant was not disabled for the period from the February 1999 application through April 26, 2001. |
|   | 10. | The claimant was not under a "disability," as defined in the Social Security Act, at any time for the period from February 1999 application through April 26, 2001 (20 CFR § 416.920(f). |

(Tr. at 15-16.)

Therefore, the only period at issue in this case is plaintiff's alleged disability from February 2, 1999 through April 26, 2001.

ISSUE PRESENTED

Plaintiff has raised the following issue:  Whether the ALJ Should Have Used the Testimony of a Vocational Expert to Determine Plaintiff's Residual Functional Capacity.

3

1  LEGAL STANDARDS

2       The court reviews the Commissioner's decision to determine whether (1) it is
3  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in
4  the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).
5  Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v.
6  Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might
7  accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.
8  1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206
9  (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical
10 testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.
11 2001) (citations omitted). "Where the evidence is susceptible to more than one rational
12 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."
13 Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

14 ANALYSIS

15      Plaintiff contends that the ALJ should have utilized a vocational expert based on
16 her non-exertional limitations.

17      The Guidelines in table form ("grids") are combinations of residual functional
18 capacity, age, education, and work experience. At the fifth step of the sequential analysis, the
19 grids determine if other work is available. See generally Desrosiers v. Secretary of Health and
20 Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

21      The grids may be used if a claimant has both exertional and nonexertional
22 limitations, so long as the nonexertional limitations do not significantly impact the exertional
23 capabilities.[3] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds,

24 _____

25  [3] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary;
26 Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989). Non-exertional activities include

4

Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc). See Desrosiers, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996).  The ALJ must weigh the evidence with respect to work experience, education, and psychological and physical impairments to determine whether a nonexertional limitation significantly limits plaintiff's ability to work in a certain category. Desrosiers 846 F.2d at 578 (Pregerson, J., concurring).  "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines.  In such a case, the guidelines would be inapplicable." Desrosiers, 846 F.2d at 577-78.  The ALJ is then required to use a vocational expert. Aukland v. Massanari, 257 F. 3d. 1033 (9th Cir. 2001).

Plaintiff has no work history.  (Tr. at 117-18.)  According to the ALJ decision dated August 14, 2003, plaintiff's mental condition deteriorated such that she met listing 12.04 for affective disorders in April, 2001, by virtue of her marked difficulty in maintaining social functioning as evidenced by symptoms of isolation, paranoia, auditory hallucinations, and anger problems.  (Tr. at 31.)  Aside from the medical expert testimony at the June 24, 2003 hearing,[4] the ALJ relied on treating records and consulting reports dated after the application filing date of April 27, 2001.  (Id. at 30-31.)

This decision granting benefits for a later period was issued during the pendency of an appeal of the January 26, 2001 decision (second ALJ decision).  That appeal resulted in the 2001 decision being vacated and remanded for further development.  The most recent decision,

---

mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; Cooper, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

[4] The transcript of the June 24, 2003 hearing is not located at pages 321-27 of the lodged transcript, as indicated in the index, and appears to be missing.

1  dated March 7, 2005, is the result of that remand.  In this decision, a different ALJ, Mark
2  Ramsey, found that plaintiff was not disabled from the time of the February, 1999 application to
3  April 26, 2001.  (Id. at 16.)  The ALJ relied on testifying medical expert Dr. Walter, a
4  psychologist, who testified that plaintiff's depression was situational, due to plaintiff's living in a
5  small apartment with seven children after her husband left her.  (Id. at 13.)

        Dr. Walter also reviewed the medical records which indicated improvement in her depression with treatment and medication.  On January 18, 1999, after plaintiff reported depression, she was given an anti-depressant which resulted in improvement.  (Id. at 150.)  At a January 9, 2000 exam by consulting internist Robert Yang, plaintiff was diagnosed with history of pulmonary tuberculosis, lumbar strain and depression; however, this doctor thought her ability to work was not affected by these diagnoses.  (Id. at 170-71.)  He did also state, "[h]er ability to work might be affected by her depression, but it appears that she was able to follow commands and able to communicate freely with the interpreter, and also with the examiner."  (Id. at 171.)

        Plaintiff underwent a psychiatric evaluation on March 4, 2000, in which she was found to be moderately impaired from depression.  Other diagnoses were adjustment disorder, pain disorder and "rule out recurrent major depressive disorder, moderate."  (Id. at 175.)  Her GAF score at this time was 55-60.[5]  (Id.)  Psychiatrist Dr. Ochuko thought plaintiff could understand, carry out and remember simple instructions, respond appropriately to coworkers, supervisors and the public, respond appropriately to work situations and changes at work.  He did not think she could manage her own funds.  (Id.)  He also opined that plaintiff's prognosis was guarded, and that she should receive psychiatric treatment and medication for depression, with further evaluation six to twelve months after treatment begins.  (Id. at 176.)

---

[5] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) ("DSM IV").  According to the DSM IV, a GAF of 51 to 60 indicates moderate symptoms such as flat affect, circumstantial speech, occasional panic attacks, or moderate difficulty in functioning as in few friends or conflicts with peers or co-workers.

Plaintiff continued receiving treatment at Sacramento Family Medical Center, which indicated improvement of her depression with medication on numerous visits between October 27, 1998 and September 8, 2000.  (Id. at 179, 180, 181, 182, 186, 197.)  On August 26, 1999, it was noted that plaintiff had a history of depression, now improved.  (Id. at 188.)  On September 30, 1999, plaintiff's depression was reported to be stable.  (Id. at 187.)

Based on these and other medical records, Dr. Walter opined that plaintiff's restrictions in daily living were only mild to moderate, social functioning was only mildly restricted, and there were mild to moderate difficulties in maintaining concentration, persistence or pace.  (Id. at 13, 303.)  Furthermore, the record did not reflect repeated episodes of decompensation of extended duration.  This expert concluded that plaintiff did not meet the listings.  (Id. at 13.)  His psychiatric review technique form indicated that plaintiff was not impaired in understanding, remembering and carrying out simple instructions, markedly to extremely impaired in understanding, remembering and carrying out detailed instructions, moderately impaired in making judgments on simple work-related decisions, slightly impaired in interacting appropriately with coworkers, supervisors and the public, and moderately impaired in responding to work pressures and changes in routine.  (Id. at 13, 273-74, 303-04.)

Dr. Walter thought that this depression was situational because it was mild before 2001, but became more severe in 2001 when her husband left her and the children.  (Id. at 304.)

Plaintiff, although mentioning in passing that Dr. Walter, the testifying medical expert, placed several non-exertional impairments on her, objects specifically only to his opinion that plaintiff had moderate limitations with even "very simple" tasks.

Based on this evidence, the ALJ found that plaintiff could do simple unskilled work. (Tr. at 15.)

SSR 85-15 states:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond

7

appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

As pointed out by defendant, plaintiff is confusing unskilled work's requirement of understanding, remembering and carrying out simple instructions, with the ALJ determination that she is moderately impaired in "ability to make judgments on simple work-related decisions." (Id. at 13.) In fact, Dr. Walter completed a psychiatric review technique form wherein he found that plaintiff had no limitation in understanding, remembering, and carrying out short, simple instructions. (Tr. at 273.) His testimony repeated this opinion. (Id. at 303.) Furthermore, his opinion relied in part on examining psychiatrist Dr. Ochuko's opinion that plaintiff could understand, remember and carry out simple instructions. (Tr. at 175.)

In regard to plaintiff's moderate impairment in ability to make judgments on simple work related decisions, the Code of Federal Regulations provides a definition of unskilled work:

> (a) Unskilled work. Unskilled work is work which *needs little or no judgment* to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 416.968(a) (emphasis added).

Unskilled work implicitly encompasses the limitations set forth by the ALJ, as found by the medical expert. The court cannot find the ALJ was required to call a vocational expert. Accordingly, his use of the grids was appropriate.

\\\\\\

\\\\\\

CONCLUSION

The undersigned has examined the record closely to understand why plaintiff was found disabled, but only on her third application, commencing in 2001. Not only is the record bereft of evidence establishing such a disabling impairment prior to 2001, but there is a reason for the increase in severity – plaintiff's husband left her and the children which would, with little doubt, cause an exacerbation of whatever impairment had previously been diagnosed.

Accordingly, the court finds the ALJ's assessment is fully supported by substantial evidence in the record and based on the proper legal standards. Plaintiff's Motion for Summary Judgment or Remand is denied, the Commissioner's Cross Motion for Summary Judgment is granted, and the Clerk is directed to enter judgment for the Commissioner.

DATED: 7/3/07

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Xiong.wpd